IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY ANDREOLLI, )
O/B/O KRISTINA MARIE ANDREOLLI, )
)
Plaintiff, )
)
v. ) Civil Action No. 15-96
)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER )
OF SOCIAL SECURITY, )
)
Defendant. )

OPINION

AND NOW, this 31st day of March, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is granted, and the Acting Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Acting Commissioner's decision of September 13, 2013, will be vacated, and the case will be remanded to the Acting Commissioner pursuant to sentence 4 of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion.

When the Acting Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Acting Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and . . . the [Acting Commissioner's] responsibility to rebut it [should] be strictly construed. . . .'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). These well-established principles dictate that the court remand this case to the Acting Commissioner for further proceedings as explained herein.

Plaintiff filed her DIB application on July 25, 2011, alleging disability beginning on June 23, 2009, due to diabetes, back problems, panic disorder and depression. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on June 24, 2013, at which plaintiff, who was represented by counsel, appeared and testified. On September 13, 2013, the ALJ issued a decision finding that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review on November 26, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.[1]

Plaintiff had a high school education and was 37 years old on her alleged onset date of disability, which is classified as a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff had past relevant work experience as a certified nursing assistant, but she did not engage in substantial gainful activity at any time after her alleged onset date.

---

[1] Kristina Andreolli passed away while her request for review by the Appeals Council was pending. Having exhausted all administrative remedies, Anthony Andreolli, who was Kristina's husband and next of kin, brought the instant action.

AO 72
(Rev. 8/82)

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Although the medical evidence established that plaintiff suffered from the severe impairments of degenerative disc disease with chronic low back pain, diabetes mellitus with neuropathy, panic disorder/generalized anxiety disorder and bipolar disorder/major depressive disorder, those impairments, alone or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retained the residual functional capacity to perform sedentary work with a number of additional non-exertional limitations. Plaintiff was restricted from climbing ladders, ropes and scaffolds, as well as crouching and crawling, but she could occasionally climb ramps and stairs, balance, stoop, kneel and use foot control pedals. In addition, plaintiff was prohibited from concentrated exposure to extreme cold, excess vibration and hazards such as dangerous moving machinery and unprotected heights. Further, plaintiff was limited to simple, routine and repetitive tasks and working in a low stress job with only occasional decision making, occasional changes in the work setting and no strict production quotas. Finally, plaintiff was restricted to no more than occasional interaction with the general public, co-workers and supervisors (collectively, the "RFC Finding").

The ALJ concluded that plaintiff was unable to perform her past relevant work because it exceeded her residual functional capacity. However, based on a vocational expert's testimony, the ALJ concluded plaintiff could perform other work that exists in significant numbers in the national economy, such as a call-out operator, charge-account clerk and telephone quotation clerk. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §423(d)(2)(A).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity.[2] 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly weigh the medical opinions issued by Dr. David Anthony and Dr. Koushik Mukherjee, who were her treating psychiatrists; (2) the ALJ's reliance on the vocational expert's testimony was improper; and (3) the ALJ's credibility analysis was incomplete. The court finds no merit to plaintiff's contention concerning the ALJ's evaluation of Dr. Anthony's

---

[2]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §404.1545(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider her ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(4).

- 4 -

and Dr. Mukherjee's respective opinions,[3] but concludes that the ALJ incorrectly relied on the vocational expert's testimony, and her credibility analysis was incomplete. For those reasons, the case must be remanded to the Acting Commissioner for additional consideration at step 5 of the sequential evaluation process.

Plaintiff first challenges the ALJ's reliance on the vocational expert's testimony. According to plaintiff, the limitation in the RFC Finding to no more than occasional interaction with the general public, co-workers and supervisors would preclude her from performing the jobs identified by the vocational expert in response to the ALJ's hypothetical question. Therefore, the ALJ should not have relied on the jobs identified by the vocational expert to find plaintiff not disabled at step 5, and his decision in that regard is not supported by substantial evidence. For reasons explained below, the court agrees.

After determining that plaintiff could not perform her past relevant work as a certified nursing assistant, the ALJ asked the vocational expert whether any jobs exist in significant numbers in the national economy for a person with plaintiff's vocational factors and residual functional capacity. The vocational expert responded that such a person could perform the following jobs, which he referred to by their classification in the Dictionary of Occupational Titles[4] (the "DOT"):

---

[3] Plaintiff argues that the ALJ erred by giving limited weight to Dr. Anthony's findings on a medical source statement that plaintiff was markedly or extremely limited in various mental work-related areas and to Dr. Mukherjee's opinion on a mental status evaluation that plaintiff would experience 4 to 6 bad days per month during which she would not be able to complete an 8-hour work day. (R. 31, 587, 704). The ALJ's opinion makes clear that she fully considered the treatment records and opinions issued by both Dr. Anthony and Dr. Mukherjee, but determined that their extremely restrictive assessments of her mental capabilities were inconsistent with the record, including their own records. The court agrees that Dr. Kennedy's and Dr. Mukherjee's findings that plaintiff was extremely limited in her ability to perform various mental work-related requirements are not substantiated by their treatment records. For example, Dr. Anthony's initial intake evaluation of plaintiff noted that she had intact attention, memory, insight and judgment and assessed her GAF score at 62. (R. 577). Dr. Anthony's treatment notes further indicate that plaintiff reported some improvement in her sleep, a less anxious and depressed mood and decreased panic attacks. (R. 573-75). Likewise, Dr. Mukharjee's treatment notes indicate that there was improvement in plaintiff's symptoms. (R. 629, 630, 633, 708).

[4] The DOT is a United States Department of Labor publication that contains descriptions of the requirements for thousands of jobs that exist in the national economy. Martin v. Barnhart, 240 Fed. Appx. 941, 943 (3d Cir. 2007).

(1) call-out operator (DOT 237.367-014); (2) charge-account clerk (DOT 205.367-014); and (3) telephone quotation clerk (DOT 237.367-046). (R. 70).

The Regulations permit the ALJ to take administrative notice of reliable job information from various governmental or other publications, including the DOT. See 20 C.F.R. §404.1566(d)(1). Social Security Ruling ("SSR") 00-4p was issued to clarify the standards for identifying and resolving conflicts between occupational evidence provided by a vocational expert and information contained in the DOT. SSR 00-4p requires the ALJ to ask a vocational expert whether his testimony conflicts with information contained in the DOT, to "elicit a reasonable explanation" for any apparent conflict before relying on the vocational expert's testimony, and to resolve the conflict by determining if the vocational expert's explanation is reasonable and provides a basis for relying on the testimony rather than on the DOT information. See SSR 00-4p, 2000 WL 1898704, at *2, *4; see also Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002) (observing that conflicts between a vocational expert's testimony and information in the DOT must be explained and the ALJ must explain in his decision how the conflict was resolved). In this case, the vocational expert stated that his testimony was consistent with the information contained in the DOT, and the ALJ agreed. (R. 35, 72).

Despite the vocational expert's testimony to that effect, and the ALJ's acceptance of it, a review of the DOT's description of each job the vocational expert identified raises a serious question whether those jobs can be performed by an individual like plaintiff who is limited to no more than occasional interaction with the general public, co-workers and supervisors. First, a call-out operator (DOT 237.367-014) is described as follows:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts <u>to fulfill subscribers' requests, using telephone</u>. Copies information onto form to update information for credit record on file, or for computer input. <u>Telephones subscriber to relay requested information</u> or submits

> data obtained for typewritten report to subscriber.

Dictionary of Occupational Titles (4th ed. rev. 1991), 1991 WL 672186 (emphasis added). Next, the duties of a charge-account clerk (DOT 205.367-014) include the following:

> <u>Interviews customers</u> applying for charge accounts: <u>Confers with customer to explain type of charge plans available</u>. <u>Assists customer</u> in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and <u>notify customer</u> of acceptance or rejection of credit [CREDIT CLERK (clerical)]. May verify entries and correct errors on charge accounts [CUSTOMER-COMPLAINT CLERK (clerical)], using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

Id., 1991 WL 671715 (emphasis added). Finally, the job of a telephone quotation clerk (DOT 237.367-046) is described to include these responsibilities:

> <u>Answers telephone calls from customers</u> requesting current stock quotations and <u>provides information</u> posted on electronic quote board. <u>Relays calls</u> to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. <u>May call customers to inform</u> them of stock quotations.

Id., 1991 WL 672194 (emphasis added.)

According to the DOT, a primary responsibility of each of these three jobs involves interaction with customers, including placing and answering telephone calls, interviewing, conferring, explaining, assisting and providing information. It is unclear to the court exactly how much interaction is required, particularly whether it is more than the occasional interaction with the general public which plaintiff is restricted to by the RFC Finding. In Social Security parlance, "occasionally" means "occurring from very little up to one-third of the time." See SSR 83-10, 1983 WL 31251, at *5; see also Owens v. Colvin, 727 F.3d 850, 851-52 (8th Cir. 2013) ("occasionally" means "up to 1/3 of the time"). Despite the fact that all three jobs require interaction with customers, the ALJ did not ask, and the vocational expert did not indicate, whether the required level of interaction is more than "occasional." If the amount of customer interaction

required by these jobs is more than occasional, then they exceed plaintiff's residual functional capacity and she would be precluded from performing them. For these reasons, there is an apparent conflict between the vocational expert's testimony and the information in the DOT, and it is impossible to discern whether the ALJ properly relied on the vocational expert's testimony in finding plaintiff not disabled.

On remand, the ALJ must ask the vocational expert about the apparent conflict between his testimony and the information contained in the DOT as it relates to interaction with the general public by specifically inquiring whether the jobs he identified require more than occasional interaction. In accordance with SSR 00-4p, the ALJ must then resolve the conflict by determining if the vocational expert's explanation is reasonable and provides a basis for relying on the vocational expert's testimony rather than on the information set forth in the DOT.

In addition, the ALJ must revisit her credibility determination on remand because we find that the ALJ failed to consider plaintiff's 18-year work history as a certified nursing assistant, (R. 46), when she assessed plaintiff's credibility. A claimant's work history is one of many factors an ALJ must consider in assessing whether a claimant's subjective complaints are credible. See 20 C.F.R. §404.1529(c)(3). Although an ALJ is not required to equate a long work history with enhanced credibility, see Christl v. Astrue, 2008 WL 4425817, *12 (W.D. Pa. Sept. 30, 2008), there is no indication in this case that the ALJ gave any consideration whatsoever to plaintiff's lengthy work history in evaluating her credibility.[5] As a result, the ALJ must consider plaintiff's work history in the context of the overall credibility evaluation.

---

[5] The Acting Commissioner suggests that the ALJ adequately considered plaintiff's work history when she determined plaintiff's earnings were sufficient to insure her for DIB purposes through December 31, 2014, and when she found that plaintiff's past work experience as a certified nursing assistant exceeded her residual functional capacity. (R. 11, 33). Contrary to the Acting Commissioner's suggestion, the ALJ's brief references to plaintiff's work history were not made in the context of the ALJ's credibility analysis, thus the ALJ did not sufficiently consider whether plaintiff's lengthy work history served to enhance her credibility.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Acting Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Acting Commissioner for further proceedings consistent with this Opinion.

s/ Gustave Diamond<br>
Gustave Diamond<br>
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Colin Callahan
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

AO 72 (Rev. 8/82)